FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
DEC 16 2024
TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

MITZI PADILLA, PERSONALLY, AND
AS THE SPECIAL ADMINISTRATOR OF
THE ESTATE OF JEREMY DALE ADAMS                          PLAINTIFF

VS.                          NO. 4:24-cv-771-BSM

DWIGHT MCINTURFF, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY AS AN EMPLOYEE
OF SALINE COUNTY, ARKANSAS;
RODNEY WRIGHT, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS THE SALINE COUNTY
SHERIFF; AND SALINE COUNTY, ARKANSAS
                                                         DEFENDANTS

## AMENDED COMPLAINT

Comes the Plaintiff, Mitzi Padilla, personally, and as the special administrator of the estate of Jeremy Dale Adams, by her counsel Ogles Law Firm, P.A., states:

   I.   **JURISDICTION AND VENUE**

   1.   This action is brought pursuant to 42 U.S.C. § 1983.

   2.   Jurisdiction is founded upon 28 §§ 1331, 1343, and 1367.

   3.   Venue is proper in this Court, as all parties are located within the Eastern District of Arkansas, and the cause of action arose in the Eastern District of Arkansas.

   II.  **IDENTIFICATION OF DECEDENT AND PARTIES**

   4.   That the Decedent Jeremy Dale Adams at the age of 39 years was shot and killed on November 16, 2023, at his home by Defendant Dwight McInturff.

   5.   Plaintiff Mitzi Padilla is an adult female who during all relevant times, was a

resident of Saline County, Arkansas. Mitzi Padilla is the sister of the decedent. The Circuit Court of Saline County, Probate Court appointed Mitzi Padilla as the special administrator of the estate of Jeremy Dale Adams on December 4, 2023.

6. Defendant McInturff is an adult male who during all relevant times was volunteering at the Saline County Sheriff's office as a reserve deputy sheriff. All of Defendant McInturff's actions and inactions were taken under the color of state law. He is sued in his individual capacity and official capacity as an employee of Saline County, Arkansas. He was 75 years of age. Volunteer McInturff was not trained as a deputy sheriff and was used to being on school property as a security officer. McInturff was alone and panicked. He had been a volunteer for 10 years but took off the past three years and started back July 2023.

7. Defendant Rodney Wright, Sheriff of Saline County, Arkansas ("Sheriff"), is an adult male who during all relevant times was employed by Saline County, Arkansas, as the Sheriff. All of the Sheriff's actions or inactions were taken under color of state law. He is sued in his individual and official capacities.

8. Saline County, Arkansas is a local governmental subdivision of the state of Arkansas, and as such is a person amendable to suit under 42 U.S.C. § 1983 and A.C.A. § 16-13-101et seq. Saline County, Arkansas is the employer of the Defendants. Defendant Saline County, Arkansas is an Arkansas County and is responsible for the policies, procedures, and practices implemented through its various agents and agencies and for injury occasioned thereby.

### III. MATERIAL FACTS

9. On November 16, 2023, the Decedent was at home in the afternoon drinking. His family called 911 to calm down the Decedent. Defendant Volunteer McInturff was on another call with another deputy when the call came in. McInturff did not have a radio that worked or a

computer in his vehicle that would have alerted him that the Saline County Deputies had been to this house many times. McInturff was 75 years of age and did not qualify to go alone and should not have gone to the Plaintiff's home alone. McInturff panicked and shot Decedent Adams for no reason. All Defendant had to do was back off and wait for backup. Instead, Defendant McInturff at 75 years of age decided to take matters into his own hands and escalated the situation knowing the deceased was intoxicated and walking inside his house. The Saline County Sheriff's office had been to the Decedent's house many times.

10. That without probable cause or any reason, Defendant McInturff shot the Decedent.

11. Defendant McInturff never issued any verbal commands or warnings to Decedent prior to shooting him.

12. That the Decedent never said anything threatening or caused any disturbance to justify being shot and killed. He was extremely intoxicated as any trained officer would know.

13. The last thing that Decedent Adams experienced was fear, physical pain, and a struggle to breathe, while laying alone in the gravel and dirt at his home.

14. That the Decedent died from the gunshot.

15. That the Saline County Sheriff allowed Dwight McInturff to volunteer as a deputy sheriff in Saline County, Arkansas, knowing that he was 75 years of age and only wanted to be a school security officer.

16. That the Defendant Dwight McInturff was not certified as a law enforcement officer by the Arkansas Commission on Law Enforcement Standards and Training.

17. If Defendant McInturff had been trained and certified, he would have known that any force used must be objectively reasonable.

18. If Defendant McInturff had been trained and certified, he would have known that before using force, he was required to verify a credible threat (not assume one).

19. If Defendant McInturff had been trained and certified, he would have known that before using deadly force, he was required, when feasible, to identify himself and issue a warning.

20. If Defendant McInturff had been trained and certified, he would have known that he was required to activate his body worn camera when contacting the public, known the history of the house, called for backup and waited. McInturff did not do research after receiving the call. McInturff admits he was too old to go by himself. No one told McInturff this was a dangerous house and was blindsided by his age. McInturff was not trained for these situations.

21. Sheriff's policies provides, "Every applicant for employment by the department must be examined for emotional stability and physical condition by an individual license and qualified to perform the examinations. The examiners shall make recommendation to the employing agency concerning the applicant's suitability for employment."

22. The stated purpose for the aforementioned policy: "It is in the keeping with the concept that in order to render proper service to the community, a law enforcement officer must be physically sound and free of any defect, which might adversely affect the performance of duty. The deputy's personal safety and the safety and lives of others will be endangered if these important physical qualifications are not met. Furthermore, the emotional stability to withstand the pressures of modern law enforcement work is an essential qualification for applicants for law enforcement service and although psychological test and interviews have recognized limitations, many personality defects can and are identified through screening by training professionals."

23. The aforementioned policy further provides: "After employment, the department

reserves the right to have any employee reexamined at any time to determine his/her fitness for duty."

24. On November 16, 2023, and at all relevant times, all Saline County Sheriff's Office (SCSO) Deputies, including McInturff, were required to be apprised of the Fourth Amendment of the United States Constitution, the proper use of force, and were required to follow all SCSO policies at all times.

25. At all relevant times, Saline County, Arkansas was the employer of the individually named defendants. Saline County, Arkansas is empowered, funded and directed to pay a § 1983 Civil Rights judgment for the compensatory damages, actual damages, and attorney fees for which any county employee acting within the scope of his or her employment is found liable. Saline County, Arkansas is an indemnification party for those liable in the acts of which plaintiff complains.

26. At all relevant times, Saline County, Arkansas was insured against lawsuits premised upon the actions or omissions of its police officers, within the scope of employment, which constitute violations of citizens' civil rights. The acts of which Plaintiff complains constitute a civil rights lawsuit against Saline County, and Saline County employed defendants. Saline County is a primary or secondary indemnification party regarding the acts of the Saline County employed defendants of which plaintiff complains.

IV.

## COUNT I - FALSE ARREST

27. Paragraphs 1-26 are incorporated herein by reference.

28. 42 U.S.C. § 1983 authorizes lawsuits against law enforcement officers who violate constitutional rights while acting under color of state law.

29. The Fourth Amendment, applicable to the states through the Fourteenth Amendment, prohibits unreasonable seizures, including arrests lacking probable cause. See Bailey v. United States, 568 U.S. 186 (2013).

30. To prevail on his false arrest claim, a Plaintiff "must show that there was no probable cause to support the seizure."

31. Defendant McInturff seized Decedent by shooting bullet into him.

32. Defendant McInturff did not have the requisite probable cause to seize Decedent.

33. As a direct and proximate result of the Defendant's conduct, Plaintiff's Decedent suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

34. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorney's fees and litigation costs.

## COUNT II - EXCESSIVE FORCE

35. Paragraphs 1-34 are incorporated herein by reference.

36. Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment's objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 388 (1989).

37. To state a claim for excessive force under the Fourth Amendment, a Plaintiff must show that a seizure occurred and that it was objectively unreasonable.

38. The test of Fourth Amendment reasonableness of force used during a seizure is whether, under the totality of the circumstances, a law enforcement officer's actions are objectively reasonable in light of facts and circumstances confronting him, without regard to his underlying intent or motivations. See Graham, 490 U.S. at 397.

39. Defendant McInturff used physical force against Decedent by firing a bullet at him with the intent of causing serious injury or death. McInturff was not trained for house calls and admitted he was too old. He had come back to the Sheriff's office to help the schools in July 2023.

40. The bullet fired by Defendant McInturff entered Decedent's stomach causing serious injury and ultimately death.

41. When Defendant McInturff used the force against Decedent, Decedent did not present as a significant or deadly threat to anyone.

42. Defendant McInturff used force that was not objectively reasonable.

43. The force used was excessive, unlawful, and used solely for the purpose of causing physical pain, injury, and/or death.

44. As a direct and proximate result of the Decedent's conduct, Plaintiff's Decedent suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

45. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorney's fees and litigation costs.

## COUNT III

46. Paragraphs 1-45 are incorporated herein by reference.

47. A lawsuit filed against a government official in his official capacity is the same as a lawsuit against the employing public entity; in this case, Saline County, Arkansas.

48. "Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted

and promulgated by the body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

49. During all relevant times, Defendant McInturff was acting pursuant to the policies and procedures of Sheriff.

50. An unconstitutional government policy may be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business. See Brewington v. Keener, 902 F.3d 796 (8th Cir. 2018).

51. Saline County, Arkansas as an employer of the Sheriff is a policymaker for Saline County, Arkansas, and the Saline County Sheriff's Office.

52. As such Sheriff's decision not to supervise Defendant McInturff's change in mental health issue to lack of training as discussed above was the policy of Saline County, Arkansas.

53. The identified policy of Sheriff and Saline County was the moving force that caused Decedent's constitutional injury.

54. As a direct and proximate result of the Defendant's conduct, Plaintiff suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

55. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorney's fees and litigation costs.

## COUNT IV
## VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT
## (ARKANSAS CODE § 16-123-105)

56. Paragraphs 1-55 are incorporated herein by reference.

57. The Arkansas Civil Rights Act provides, "Every person who, under color of any

statute, ordinance, regulation, custom, or usage of this state or any of its political subdivision subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress."

58. The Defendants' conduct constitutes a violation of the Arkansas Civil Rights Act of 1993 for the same reasons the Defendants' conduct violates 42 U.S.C. § 1983.

59. As a direct and proximate result of the Defendants' conduct, Decedent suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

60. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

## COUNT V

61. Paragraphs 1-60 are incorporated herein by reference.

62. During all relevant times, Defendants were acting as employees of Saline County, Arkansas, in the course and scope of their employment.

63. McInturff acted with intent to cause some harmful or offensive contact with Decedent Adams.

64. McInturff acted with the intent to create the apprehension of some harmful or offensive contact with Decedent Adams.

65. McInturff unlawfully pointed a firearm at Decedent Adams.

66. McInturff caused harmful or offensive contact with Adams that caused Adams to suffer physical injury and death.

67. McInturff fired a bullet into Adams' body causing injury and death.

68. As a direct and proximate result of the Defendants' conduct, Plaintiff's Decedent suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

69. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorney's fees and litigation costs.

### COUNT VI

70. Paragraphs 1-69 are incorporated herein by reference.

71. During all relevant times, McInturff was acting as an employee of Saline County, Arkansas in the course and scope of his employment.

72. McInturff willfully and wantonly engaged in the aforementioned extreme and outrageous conduct.

73. McInturff's conduct is the proximate cause of the Plaintiffs' emotional distress.

74. As a direct and proximate result of the Defendant's conduct, Plaintiff's Decedent suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

75. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorney's fees and litigation costs.

### COUNT VII

76. Paragraph 1-75 are incorporated herein by reference.

77. Adams was killed because of the Defendants' reckless and wrongful conduct.

78. Padilla is the duly appointed special administrator of the estate of Jeremy Dale Adams.

79. Padilla, as the special administrator of the decedent, is asserting this wrongful death claim on behalf of herself and all survivors and heirs, to recover all financial losses discussed herein permitted by law.

80. Adams did not have a spouse or children.

81. Adams is survived by his mother and his sister Mitzi Padilla, the personal representative.

82. As a direct and proximate cause of Defendants' conduct, which caused Adams' wrongful death, Padilla and Adams' survivors and heirs suffered a financial loss associated in large part with mental anguish, lost services, society, guidance, companionship, and comfort.

83. As a direct and proximate result of the Defendants' conduct, Adams' estate has and will incur attorney's fees and litigation costs.

### COUNT VIII (Failure to supervise, train or provide proper equipment)

84. Paragraphs 1-83 are incorporated herein by reference.

85. During all relevant times, McInturff was acting as deputy sheriff of Saline County, Arkansas in the course and scope of his employment.

86. Sheriff knew, or in the exercise of reasonable care should have known, that McInturff subjected others to an unreasonable risk of harm.

87. Sheriff was negligent in supervising, training McInturff and maintained a widespread custom of excessive force, so as to constitute an internal policy. Furthermore, the Sheriff was negligent for not providing McInturff a proper radio, computer or backup. McInturff was too old to handle these domestic disturbance house calls by himself (75 years old) and he admitted the same.

88. Sheriff's negligence in supervising McInturff was a proximate cause of Plaintiff's

injuries and damages.

89. As such, Saline County, Arkansas as employer of the Sheriff (Official Capacity) is vicariously liable for McInturff's aforementioned negligent and tortious conduct.

90. As a direct and proximate result of Defendants' conduct, Plaintiff suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

91. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorney's fees and litigation costs.

## COUNT IX
## SUBSTANTIVE DUE PROCESS VIOLATIONS

92. All of the allegations previously pled herein are re-alleged as though stated word for word.

93. Arkansas' crime victim's civil liability statute, Ark. Code Ann. § 16-118-107 provides a civil cause of action to "[a]ny person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law."

94. A.C.A. § 5-13-203 provides a person commits a battery in the third degree if with the purpose of causing physical injury to another person, the person causes physical injury to any person; or the person recklessly causes physical injury to another person.

95. McInturff purposely and recklessly, and not for any legitimate penal reason or purpose, caused physical injury to Decedent.

96. In addition of McInturff's actions, Plaintiff also seeks redress from Saline County, Arkansas, policy maker and final decision maker with regard to the Saline County Sheriff's Department which has the force and effect of policy for the County and allowing a volunteer deputy to handle house calls alone and not proper training or equipment.

97. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorney's fees and litigation costs.

## V. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor as follows:

A. Declaratory Judgment: Providing that the Defendants' individual and collective conduct violated Plaintiff and Adams' survivors and heirs' state and federal rights;

B. Compensatory Damages: Including, but not limited to, the monetary value associated with the following: violations of legal rights, emotional distress, emotional injury, embarrassment, mental anguish, loss of reputation, loss of support, physical injury, pain and suffering, loss of enjoyment of life, loss of life, and death in excess of $100,000.00.

C. Punitive damages as permitted by law in excess of $100,000.00.

D. Equitable Relief: An admission of the allegations stated in the Complaint, in writing, and an oral and written apology for same, in person, from the Defendants;

E. Attorney's Fees and Costs: and

F. Discretionary Damages and Relief: Such other financial or equitable relief that the Court deems reasonable and just.

## VI. JURY DEMAND

Plaintiff respectfully requests a trial by jury on all claims/issues in this matter that may be tried to a jury.

Respectfully submitted,

John Ogles
Arkansas Bar No. 89003
Texas Bar No. 00797922
OGLES LAW FIRM, P.A.
200 S. Jeff Davis
P.O. Box 891
Jacksonville, AR 72078
(501) 982-8339
jogles@aol.com