IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MITZI PADILLA, personally and as the**
**special administrator of the estate of**
**JEREMY DALE ADAMS**                                                                 **PLAINTIFF**

**CASE NO. 4:24-cv-00771-BSM**

**DWIGHT MCINTURFF, Individually and**
**In his Official Capacity as an employee**
**Of the Saline County Sheriff's Office;**
**RODNEY WRIGHT, Individually and in his**
**Official Capacity as the Saline County**
**Sheriff; Saline County, Arkansas**                                                 **DEFENDANTS**

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Come now the Defendants, Dwight McInturff and Sheriff Rodney Wright, in their

individual and official capacities, and Saline County, Arkansas (referred to collectively herein as

the "Defendants" or "Defendant"), and for their Brief in Support of Motion for Summary Judgment

herein state and allege:

I.       **INTRODUCTION**

Plaintiff, personally and as the Special Administrator of the Estate of Jeremy Dale Adams,

brings suit against Dwight McInturff and Sheriff Rodney Wright, both individually and officially,

and Saline County, Arkansas. *Amended Complaint*, Doc. No. 12. The claims against McInturff and

Wright, in their official capacities, and Saline County are redundant and represent the County itself

only, which Plaintiff recognizes in paragraph 47 of the Amended Complaint. In their individual

capacities, Plaintiff sues McInturff and Wright acting under color of law.

Plaintiff sues for false arrest under 42 U.S.C. § 1983. Doc. No. 12, p. 5. Next, Plaintiff sues

for excessive force under the Fourth Amendment by and through Section 1983, claiming that the

use of force as to the Decedent was unlawful. *Id*. at p. 6. Next, Plaintiff sues the County for a

1

purported *Monell* claim and alleges that McInturff's actions were pursuant to policies and procedures of Sheriff Wright. *Id*. at p. 8. Specifically, Plaintiff asserts a failure-to-supervise claim against the County. *Id*. It is not clear if Plaintiff is asserting a claim against Sheriff Wright individually in Count III, the County, or both. *Id*. However, Count VIII appears to assert a supervisory or training claim against Sheriff Wright individually, claiming the Sheriff was allegedly negligent in supervising and training McInturff and negligent in not providing McInturff a proper radio, computer, or backup. *Id*. at ¶ 87. Plaintiff alleges the County is vicariously liable for the alleged actions of McInturff which Plaintiff characterizes as "negligent and tortious." *Id*. at ¶ 89. Plaintiff also attempts to allege a violation of substantive due process, which is a claim arising under the Fourteenth Amendment by and through Section 1983; however, Plaintiff's allegations under Count IX assert an alleged violation of Ark. Code Ann. § 16-118-107 and asserts because McInturff's actions allegedly constitute state law criminal battery, the statute permits a private right of action to Plaintiff. .

Moving to state claims in the Amended Complaint, Plaintiff asserts a claim (presumably against all Defendants) under the Arkansas Civil Rights Act (ACRA) asserting that the federal Section 1983 claim and the ACRA claim are effectively the same. Doc. No. 12, ¶ 58. Plaintiff then sues Defendant McInturff for the state torts of assault and outrage. *Id*. at pp. 9-10. Finally, Plaintiff asserts a state claim of wrongful death, claiming that all Defendants' conduct was allegedly "reckless and wrongful." The Defendants have answered denying Plaintiff's allegations of wrongdoing and the Parties have completed discovery. The Defendants now move for summary judgment and assert, among other defenses, the defenses of qualified immunity and state statutory immunity as more fully argued below.

## II.    UNDISPUTED FACTS

The Defendants have filed, contemporaneously herewith, a Statement of Undisputed Material Facts which is incorporated by reference herein as if repeated word for word pursuant to Fed. R. Civ. P. 10(c). The material facts in this case are undisputed.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See Schmidt v. Des Moines Pub. Sch*., 655 F.3d 811, 819 (8th Cir. 2011). That said, the Court should not draw unreasonable inferences or accept sheer speculation as fact. *Klum v. City of Davenport*, 145 F.4th 907, 911 (8th Cir. 2025).

Importantly in this case, where Plaintiff has attempted to blatantly contradict what she told dispatch during her 911 calls (calls which she authenticated during her deposition), the Court should not credit her self-serving testimony. *Klum*, 145 F.4th at 911. Any alleged factual dispute Plaintiff attempts to assert is not credited where it is blatantly contradicted by the record. *Id*.; *Scott v. Harris*, 550 U.S. 372, 380 (2007).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a *genuine* dispute as to a purported *material* fact exists. *Klum*, 145 F.4th at

911; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . .." *Id.* at 247-48. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Id.* at 252. Additionally, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010). "To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted).

### III.    DISCUSSION

#### A.    *Qualified Immunity Standard*

Unless the constitutional rule is "beyond debate" via existing precedent at the time of the law enforcement officer's action in question such that "every reasonable officer" would have fair warning/notice of the rule, qualified immunity applies. "This generally requires a plaintiff to point to existing circuit precedent that involves sufficiently 'similar facts' to 'squarely govern' the

officer['s] conduct in the specific circumstances at issue." *Klum*, 145 F.4th at 912; *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021) (internal quotation marks omitted).

"[Q]ualified immunity provides immunity from suit rather than a mere defense to liability, and . . . is effectively lost if a case is erroneously permitted to go to trial." *Brown v. Nix*, 33 F.3d 951, 953 (8th Cir. 1994) (citations and internal quotations omitted). Qualified immunity is designed to "protect officials from the disruptions of going to trial as well as from liability for money damages . . . [i]t is important for public officials to be shielded from the burden of trial on insubstantial claims." *Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199, 202-03 (8th Cir. 1986). Accordingly, the Court generally should rule upon the defense "at the earliest possible time." *Id*.

Whether a government employee is protected by qualified immunity turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.' " *Wilson v. Layne*, 526 U.S. 603, 614 (1999).  A constitutional right is not clearly established unless "every reasonable officer" would know that the action taken violated the right at issue. *Klum*, 145 F.4th at 912. Thus, the constitutional question must be "beyond debate" at the time of the challenged conduct. *Id*.

A court must look only to the law that was clearly established at the time of the challenged conduct, not thereafter, for later legal developments cannot put an officer on fair notice of the constitutionality of his or her actions. *See De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (discussing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

Qualified immunity serves important policy purposes:  First, "'[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments,'" and protects "'all but the plainly incompetent or those who knowingly violate the law.'" Stanton v. Sims, 134 S. Ct. 3, 4 (2013) (per curiam) (internal quotations omitted). Secondly, it enables courts to avoid deciding constitutional questions unnecessarily—if a right was not clearly established, a court need not determine whether the officer's actions were objectively reasonable. *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.  *See Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).

In deciding the second prong of qualified immunity—whether the law was clearly established at the time of the challenged conduct—the Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *De La Rosa*, 852 F.3d at 745. "Absent a case that is controlling authority in our jurisdiction, we look for 'a robust consensus of cases of persuasive authority.'" *Id*. (internal quotations omitted). Again, "[t]his generally requires a plaintiff to point to existing circuit precedent that involves sufficiently 'similar facts' to 'squarely govern' the officer['s] conduct in the specific circumstances at issue." *Klum*, 145 F.4th at 912; *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021) (internal quotation marks omitted).

Crucially, the Supreme Court–in continually requiring that law enforcement officers have fair warning that their conduct is or is not constitutional–has found "[s]uch specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply

to the factual situation the officer confronts.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (*per curiam*) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

1. **There is no underlying constitutional violation**.

*False Arrest—Fourth Amendment*

While Plaintiff attempts a false arrest claim on page 6 of the Amended Complaint, that claim can be read as a claim that the force used by Officer McInturff was an alleged unreasonable seizure. If that's what Plaintiff is alleging, the Plaintiff's excessive-force claim and false arrest claim are the same and the excessive force claim is discussed in the next section. However, to the extent Plaintiff is asserting Officer McInturff lacked probable cause to arrest the Decedent at all, the Defendants are entitled to summary judgment.

"Probable cause exists when 'the totality of circumstances at the time of the arrest '[are] sufficient to lead a reasonable person to believe that the defendant (here Plaintiff's Decedent" has committed or is committing an offense.'" *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (internal citation omitted). This is a pure question of law. *Id*. at 1227. Officers on the scene are not required to conduct a "mini-trial" before arresting a suspect. *Id*. at 1228.

Probable cause deals with probabilities and depends on the totality of the circumstances. *Wesby*, 583 U.S. at 57. It does not require a showing of "actual" criminal activity and "[p]robable cause 'is not a high bar.'" *Id*.

The Plaintiff herself called 911, twice, claiming that the Decedent had threatened her and that she did not want him at her residence on Wasson Road in Saline County, Arkansas. She advised dispatch that the Decedent was angry, kicked her door open, was threatening to beat people up, and was throwing rocks at her truck. She told dispatch that the Decedent stated he would bust the windows out of her truck. In her deposition testimony, Plaintiff testified that she advised dispatch

that the Decedent had been drinking, and in the Amended Complaint concedes that the Decedent was "extremely intoxicated as any trained officer would know." Doc. No. 12, ¶ 12.

Officer McInturff received a text alert from dispatch which stated that there was a call claiming terroristic threatening by the caller's brother (the Decedent) where the Decedent was threatening the caller and stating he was going to bust the windows out of the caller's vehicle. She called 911 a second time confirming law enforcement was coming to her residence and that the Decedent had "flipped out." When Officer McInturff arrived, he gave valid orders to the Decedent, all of which the Decedent refused to comply with. Decedent had thrown rocks at the Plaintiff's truck and the Plaintiff wanted the Decedent off of her property, where her mother (who she testified was disabled) was inside her home. Plaintiff parked across the street from her own home waiting for law enforcement while the Decedent went inside the home. And Plaintiff's children would be dropped off from school near the time she called law enforcement.

Probable cause existed to arrest the Decedent for numerous offenses based on Plaintiff's own testimony and for refusal to submit to arrest and resisting arrest before any force was used. And the Decedent was not seized via handcuffs or arrested via handcuffs because of his repeated refusal to submit to arrest or comply with any of Officer McIntuff's commands. To the extent Plaintiff is attempting to assert a false arrest claim, the same should fail and the Defendants are entitled to summary judgment.

### *Excessive Force Claim[1]*

In considering an excessive-force claim, courts ask whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them. *Lombardo v. City*

---

[1] Plaintiff also appears to assert a substantive due process claim. Such a claim is a claim pursuant to the Fourteenth Amendment's Due Process Clause and does not apply, and should be dismissed, where a different constitutional amendment provides a specific textual source of protection, such as the Fourth Amendment in this case. *Graham*, 490 U.S. at 395.

*of St. Louis, Missouri*, 594 U.S. 464, 466, 141 S. Ct. 2239, 2241 (2021) (internal quotations and citations omitted). The "inquiry into the reasonableness of police force requires analyzing the totality of the circumstances." *Barnes v. Felix*, 605 U.S. 73, 80, 145 S. Ct. 1353, 1358 (2025) (internal quotes and citation omitted). The Plaintiff must show that the officer acted unreasonably "'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Maser v. City of Coralville, Iowa*, 139 F.4th 1004, 1009 (8th Cir. 2025) (quoting *Graham*, *supra*.).

Factors to consider include, but are not exclusive to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). Deadly force is reasonable where an officer has probable cause to believe that a suspect poses a significant threat of death or serious physical injury to the officer or others. *Schulz v. Long*, 44 F.3d 643, 649 (8th Cir. 1995) (citing *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)); *see also Maser*, 139 F.4th at 1009 (quoting *Rogers v. King*, 885 F.3d 1118, 1121 (8th Cir. 2018)).

Additionally, where multiple shots are fired in an officer-involved shooting, an officer is permitted to use force during the pendency of the threat; and, where the shots are fired within seconds of one another, it constitutes an "essentially continuous" use of deadly force. *Maser*, 139 F.4th at 1010; *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014).

Additionally, relevant to this case, law enforcement officers are not required to consider alternatives in conducting their job duties as the Plaintiff appears to assert in the Amended Complaint. Doc. No. 12, ¶ 9 ("All Defendant had to do was back off and wait for backup."). *Schulz*, 44 F.3d at 649 ("The Fourth Amendment inquiry focuses not on what the most prudent course of

action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within the range of conduct which is objectively reasonable."); *County of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 428 (2017) (rejecting the former "provocation rule" the Ninth Circuit had employed); *Scott v. Harris*, 550 U.S. 372, 385 (2007) (rejecting a rule allowing fleeing suspects "to get away whenever they drive so recklessly that they put other people's lives in danger" as creating perverse incentives). Plaintiff's apparent attempt to argue a reasonable officer in McInturff's shoes, on the scene, must employ alternatives that Plaintiff or Counsel can conceive in hindsight is precisely contrary to the rule that courts do not consider objective reasonableness with 20/20 hindsight, as the Court found in *Schulz v. Long*.[2] And that is not the law. In fact, Plaintiff's exact argument asserted in the Amended Complaint was long ago addressed in *Schulz,* where the United States Court of Appeals for the Eighth Circuit rejected the argument that, as an alternative, an officer must wait for backup in order for a use of force to be objectively reasonable. 44 F.3d at 649 (affirming the District Court's exclusion of evidence of alleged alternative courses of action because such focuses on "what could have been done rather than whether Officer Long had probable cause to believe Appellant posed a significant threat of harm to Officer Vanalmsick.").

Plaintiff's assertion also fails to consider *Plaintiff* called law enforcement advising the Decedent had acted aggressively, angrily, and dangerously by threatening her and threatening to beat people up. It was evident, as Plaintiff confirmed, the Decedent was under the influence of substances including alcohol and it is undisputed the Decedent refused all commands given by Officer McInturff. It is also clear a reasonable officer in this circumstance would (although the

---

[2] Although, Plaintiff's bare assertion in the Amended Complaint is belied by her own testimony where she confirmed that Officer McInturff unsuccessfully attempted to use his taser to end the threats posed by the Decedent but the taser was not effective.

question is "could" the officer conclude the danger exists) be concerned with the Decedent entering the home (where he was trespassing based on Plaintiff's own 911 calls), where she indicated to dispatch she didn't want the Decedent at the home and her mother was in the home and disabled—while Plaintiff herself stayed across the street from the situation with the Decedent at Plaintiff's home until law enforcement arrived. And it is undisputed, despite commands (all of which Decedent refused to honor), he attempted to enter the home twice after Officer McInturff arrived. A reasonable officer could conclude the Decedent would retrieve a weapon and use it against Officer McInturff, the Plaintiff, or anyone that encountered the Decedent or that the Decedent encountered. This is so particularly considering Decedent's refusal to follow commands, resistance, Decedent's yelling and cussing at Officer McInturff, and his aggression against the Officer and Plaintiff's report of Decedent's conduct which manifested in Decedent violently attacking the officer.

While Plaintiff appears to point to the Decedent's alleged mental health issues, the Decedent was patently under the influence of substances or alcohol (which Plaintiff concedes in paragraph 12 of the Amended Complaint)—which was later confirmed. Plaintiff *alleges* he was extremely intoxicated. Nevertheless, "…the cases establish that mental illness or intoxication does not reduce the immediate and significant threat a suspect poses." *Sok Kong Trustee for Map Kong v. City of Burnsville*, 960 F.3d 985, 993 (8th Cir. 2020).

Plaintiff also falsely asserts Officer McInturff was not trained and, through discovery, it is undisputed he had ample training including force training and weapons training. Plaintiff insinuates that Officer McInturff failed to follow policies of the Sheriff's Office; that is denied, but is simply not relevant. *Sok Kong Trustee for Map Kong*, 960 F.3d at 993 ("However, acting contrary to training 'does not itself negate qualified immunity … so long as a reasonable officer ***could*** have

believed that his conduct was justified.'" *Id*. (quoting *City of San Francisco v. Sheehan*, 575 U.S. 600 (2015) (emphasis added)).

In this case, the Decedent presented a threat of serious physical harm or death to Officer McInturff and the Plaintiff before the use of force in this case based on Padilla's own calls to 911, the undisputed video evidence demonstrating the Decedent's violent behavior, refusal to comply with any command, Decedent's physical attack on McInturff, and Decedent's multiple attempts to enter the Plaintiff's home. The threat also is clear based on Officer McInturff's undisputed testimony. Despite being a trespasser on Padilla's property at that point, the Decedent refused to comply with multiple commands by Officer McInturff (indeed, all commands) and attempted to enter the Plaintiff's home twice. Her mother was disabled and was in the home. These undisputed events constitute a threat a reasonable officer "on the scene" without the benefit of 20/20 hindsight, could and would perceive based on Padilla's 911 calls, the undisputed video evidence showing, *inter alia*, the Decedent violently attack Officer McInturff (which resulted in a significant injury to Officer McInturff), and the Decedent's refusal to comply at all with any command given by Officer McInturff.

After attempting to prevent the Decedent from entering the home, the Decedent struck Officer McInturff with a closed fist violently to the side of the Officer's head causing a concussion and continued to swing. It was then that the three continuous and successive gun shots occurred. The Decedent was a threat of at least serious physical harm to Officer McInturff and whomever was in the home and the Plaintiff if not also death, and the use of deadly force was objectively reasonable based on the totality of the circumstances. Throughout the Plaintiff's complaint, she creates a fantasy scenario that did not occur and that is blatantly contradicted by her own authenticated 911 calls, authenticated video evidence, her testimony, and the undisputed testimony

of Officer McInturff. In this case, no constitutional violation occurred and all Defendants are entitled to summary judgment.

2. **Assuming *arguendo* an underlying constitutional violation, the law was not clearly established and Defendants are entitled to qualified immunity under the second prong of the defense**.

*False Arrest—arguable probable cause at least existed*

For qualified immunity purposes, a Defendant need only show that he or she had "arguable probable cause" to arrest. *Joseph*, 712 F.3d at 1226. "'Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is 'objectively reasonable.'" *Id*. (internal citation omitted).

Here, actual probable cause existed to arrest the Decedent, although only an attempt to arrest the Decedent occurred before the use of force due to Decedent's repeated refusal to obey any command and submit to arrest. However, even assuming *arguendo* actual probable cause did not exist, it was objectively reasonable for Officer McInturff to conclude probable cause to arrest the Decedent existed and he had at least arguable probable cause. Thus, he is entitled to qualified immunity in the least. Additionally, under the second prong of the qualified immunity defense, Plaintiff cannot show clearly established caselaw, that would or could have put Officer McInturff (and every reasonable officer) on fair notice that he allegedly lacked probable cause to arrest the Decedent in November of 2023.[3] The appropriate caselaw to review, set an appropriate level of specificity with sufficient factual correspondence to the facts of this case, as of the date of the

---

[3] Where the Fourth Amendment is involved, which itself has an objective reasonableness test, it is often the case that the objective reasonableness inquiry of the second prong of qualified immunity is improperly collapsed into the Fourth Amendment test. The Fourth Amendment test involves the facts at issue and whether a reasonable officer could conclude the conduct at issue was constitutional. The qualified immunity reasonableness test involves asking what every reasonable officer could know about the state of the law. While seemingly similar, they are distinct.

incident in this case, would not have given Officer McInturff fair warning that he allegedly lacked probable cause to arrest the Decedent. For this additional reason, Officer McInturff is at least entitled to qualified immunity and, thus, summary judgment.

### *Excessive Force—the law was not clearly established*

"Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case.'" *Kisela v. Hughes*, 584 U.S. 100, 104 (2018); *Brosseau v. Haugen*, 543 U.S. 194 (2004) (*per curiam*). In *Kisela*, the United States Supreme Court held that the cases of *Tennessee v. Garner* and *Graham v. Connor*, both of which set forth general principles, "do not by themselves create clearly established law outside 'an obvious case.'" *White v. Pauly*, 580 U.S. 73, 80 (2017); *Kisela*, 584 U.S. at 105. The Supreme Court found that *Tennessee* and *Graham* are cast at too high a level of generality. *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). Furthermore, the Supreme Court has never held that precedent from a Court of Appeals will clearly establish the law in a given context; rather, it has held firm to the principle that the Supreme Court's precedent alone will or will not establish clear legal authority. *Kisela*, 584 U.S. at 106 (quoting *City and County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 613-14 (2015) (finding that the Ninth Circuit's own "constitutional rule" was "far too general a proposition to" control that case and, instead, applying Supreme Court precedent).

It is the Plaintiff's burden to demonstrate the clearly established law that was allegedly violated, but here Plaintiff cannot discharge that burden. *See Plumhoff*, 572 U.S. at 779-80; *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). Qualified immunity "protects officials who make bad guesses in gray areas" and "gives them breathing room to make reasonable but mistaken judgements." *Id*. That was precisely the case in *Brosseau v. Hagen*, where the Supreme Court held the use of deadly force, after a physical scuffle and while the suspect was driving away

14

from the officer, amounted at most to the hazy border between acceptable and unacceptable force; thus, the Supreme Court granted qualified immunity under the second prong of the defense.

In a somewhat similar case, also on video, an officer shot a suspect who struggled with the officer, while the struggle occurred. *Whitaker v. Springettsbury Tp.*, Civil No. 1:08-CV-627, 2010 WL 1565453, *7-11 (M.D. Pa. April 19, 2010) (unreported) Report and Recommendation adopted at 2010 WL 2302295 (M.D. Pa. June 7, 2010). In that case, the struggle also involved the Decedent advancing toward the officer violently and landing punches to the Officer's head and body. *Id*. at 2010 WL 1565453, *9. The Court there found the use of force was objectively reasonable (under the first prong of the qualified immunity test) and granted the Officer summary judgment. *Id*. at *12.

In this case, given the rapidly evolving events, the Decedent's attempt to enter the residence twice where he might have retrieved a weapon (where a reasonable officer could conclude that was Decedent's intent), in defiance of valid commands by Officer McInturff, the Decedent's active resistance, aggression, and Decedent's use of violent force against Officer McInturff (which injured Officer McInturff), which continued without abatement prior to the discharge of McInturff's service weapon, the use of deadly force here was not objectively unreasonable. Only by review of this matter in hindsight, in the quiet of the courtroom or office, could a person even theorize events that did not present themselves to Officer McInturff in the press of the real circumstances he faced. That is clearly not the standard. Thus, on all claims, Defendants are entitled to summary judgment under the first prong of the defense.

Alternatively, Officer McInturff and Sheriff Wright, in their individual capacities, are entitled to qualified immunity for all federal claims (and as a result, summary judgment on all claims) because Plaintiff cannot show Officer McInturff violated clearly established law that

15

"every reasonable officer" would know and which was "beyond debate" as of the date of the incident in question in this case. Plaintiff cannot show clearly established binding precedent or a robust consensus of persuasive authority, which is sufficiently similar factually, such that Officer McInturff would have been given fair warning his use of force in this case was allegedly unconstitutional. In the least, under the second prong of the qualified immunity defense, McInturff and the Sheriff are entitled to qualified immunity and, thus, summary judgment.

### B. Arkansas Civil Rights Act claims

The Plaintiff also asserts claim(s) under the ACRA which is parallel to the Plaintiff's federal claims. Plaintiff does not assert any reason the ACRA claim should be addressed any differently than the Plaintiff's federal claims and it should not. Rather, because the Defendants are entitled to summary judgment and qualified immunity as to Plaintiff's federal claims, Defendants are also (and to the same extent) entitled to summary judgment and qualified immunity as to the Plaintiff's ACRA claim. Ark. Code Ann. § 16-123-105(c) (noting a court may look to guidance in state and federal decisions under Section 1983 when construing the ACRA); *Arnold v. McClinton*, 112 F.4th 598, 605 (8th Cir. 2024) (noting that ACRA is generally treated coextensively with Section 1983).

### C. *Saline County—federal claims*

First, because there is no underlying constitutional violation, the Defendants in their official capacities and Sheriff Wright are entitled to summary judgment. *Purifoy v. Nelson*, Case No. 4:25-CV-00291-BSM, 2025 WL 2775944, *2 (E.D. Ark. Sept. 29, 2025) (slip copy). Nevertheless, on other grounds the County is entitled to summary judgment. The Amended Complaint's claims against County Defendants in their official capacities (and Saline County itself) are exclusively claims against Saline County, Arkansas. *Marsh v. Phelps County*, 902 F.3d

745, 751 (8th Cir. 2018). The Plaintiff here "…must prove that the County '*itself* caused the constitutional violation at issue.'" *Id*. at 751 (quoting *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006)). (emphasis in original).

The Plaintiff cannot sue the County (or County Defendants officially) on the theory of *respondeat superior*, although that is in large part what Plaintiff attempts here. *Marsh*, 902 F.3d at 751. In *Marsh*, the Eighth Circuit said: "[t]o prove the existence of a policy, a plaintiff must point to 'an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" 902 F.3d at 752 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "There must be a causal connection between the [alleged] municipal policy or custom and the alleged constitutional deprivation in order to state a valid claim under § 1983." *Ulrich*, 715 F.3d at 1061; *Marsh*, 902 F.3d at 752 ("a direct causal link'). A claim of failure to train is merely an extension of a "policy or custom" claim per *Marsh*. *Id*. at 751.

It is not enough for the Plaintiff to show a written policy allegedly might have permitted unconstitutional conduct against the Plaintiff which caused injury. *Id*. (quoting *Szalba v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007) (en banc). In *Handle v. City of Little Rock*, the Honorable District Judge Roy of this District held: "[i]n *Kerr*, the Court concluded that a municipal policy is not unconstitutional if it might *permit* unconstitutional conduct in some circumstance; it is unconstitutional only if it '*require[s]* its officers to act unconstitutionally.'" 772 F. Supp. 434, 438 (E.D. Ark. 1991) (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1554 (11th Cir. 1989) (emphasis in original)). Additionally, and importantly here, the Court in *Handle* said: "[a]s the record now stands, the plaintiff has presented only a vague and conclusory allegation of alleged uses of excessive force and one incident in which a jury found that excessive

17

force was not used. Plaintiff's personal opinion and speculation on how the policies might be applied is of little value." 772 F.Supp. at 438.

Additionally, "…a failure to implement a specific policy does not equate to a failure to adopt a constitutionally adequate policy." *Whitney v. City of St. Louis*, 887 F.3d 857, 861, fn.5 (8th Cir. 2018). In *Szalba*, the Eighth Circuit ruled:

> But even so, Brooklyn Park's directives do not affirmatively sanction the use of the dogs in an unconstitutional manner. The policy is simply silent concerning the circumstances under which an officer should provide a warning before a canine is directed to bite and hold a suspect. The directives do not reflect a deliberate choice by policymakers to refrain from warning citizens about the use of dogs.

486 F.3d at 392. The Court said: "…a written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability." *Id*.

### *Written Policies*

The written policies are facially constitutional and did not direct any officer to use excessive force or otherwise allegedly violate anyone's rights. The policies Plaintiff mentions in the Amended Complaint did not direct Officer McInturff or anyone to violate any person's constitutional rights. Thus, to the extent Plaintiff attempts a policy claim here the same must fail and the County is entitled to summary judgment.

### *Failure to Supervise / Train*

In *Banks v. Moore*, 4:20-cv-00182 KGB, 2022 WL 993737, *21-22 (E.D. Ark. March 31, 2022), another District Court in this District noted the elements for a failure-to-train claim: "where (1) the ... training practices [were] inadequate; (2) the [state actor] was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the state actor]'; and (3) an alleged deficiency in the ... training procedures actually caused the plaintiff's injury." *Id*. (quoting *Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1998)); *see*

18

*also Jeffrey v. Salaam*, Case No. 4:24-cv-00128-LPR, 2025 WL 1490361, *2 (E.D. Ark. May 23, 2025) (slip copy). The "bar for such a claim is pretty high. As the Supreme Court has explained, '[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Jeffrey*, 2025 WL 1490361, *2 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Like in *Jeffrey*, at best Plaintiff's purported supervisory claim in this case "is just a failure-to-train claim by another name." 2025 WL 1490361, *6 (citing *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) ("[B]oth [failure-to-train and failure-to-supervise] claims ultimately require the same analysis."). Supervisory liability requires Plaintiff to allege and prove that Sheriff Wright "(1) received notice of a pattern of *unconstitutional* acts committed by subordinates, (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts, (3) failed to take sufficient remedial action, and (4) that such failure proximately cause injury." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996).

Here, the training that Officer McInturff received set forth in the SUMF and attached exhibits, as well as all deputies of the Sheriff's department, is more than constitutionally adequate. There is no evidence the Sheriff was deliberately indifferent in adopting the training requirements he required of McInturff or any other deputy. And finally, because they were not inadequate and McInturff was adequately trained, they did not cause any alleged constitutional violation—which is denied in any event. The Plaintiff's failure-to-train claim should fail and Defendants are entitled to summary judgment.

Likewise, Plaintiff cannot show and has not shown that Sheriff Wright received notice of a pattern of unconstitutional acts by anyone. She alleges the event with Decedent and Officer McInturff represents an instance of unconstitutional conduct (which is denied as argued above),

19

but fails to allege any "pattern" of unconstitutional acts by anyone. Thus, Plaintiff has not and cannot show deliberate indifference to such a nonexistent pattern, failure take remedy such nonexistent patter, or such alleged failures caused anything. Defendants are entitled to summary judgment on any failure-to-supervise claim Plaintiff attempts to make.

Alternatively, given *Andrews v. Fowler*, a reasonable supervisor in Sheriff Wright's position would not be on fair notice that anything he did or did not do relative to the events in this case or earlier events amount to a constitutional violation against anyone. Thus, he retains qualified immunity in his individual capacity as to any such claims. To the extent training and supervision claims are made against the County (Defendants individually), they fail for the same reasons such claims, on the merits, fail against Sheriff Wright. Defendant are entitled to summary judgment.

**D.    State law Assault, Outrage, Statutory Claim under Ark. Code Ann. § 16-118-107**

The elements of assault under Arkansas law require that a plaintiff allege and prove a defendant intentionally placed someone in fear of immediate physical harm and that the defendant acted with intent to cause a harmful conduct with that person. *See Mann v. Pierce*, 2016 Ark. 418, *7, 505 S.W.3d 150, 154 (citing model jury instructions).

Outrage has the following elements: "the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was 'extreme and outrageous, was 'beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community;' (3) the actions of the defend were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it." *Crockett v. Essex*, 341 Ark. 558, 563-64, 19

S.W.3d 585, 589 (2000) (internal citation omitted). The Arkansas Supreme Court takes a "strict approach in determining the validity of outrage cases." *Id*. at 564.

Under Ark. Code Ann. § 5-2-603, a public servant such as a law enforcement officer has a defense of justification. There, where "conduct that would otherwise constitute an offense" occurs, it is "justifiable when it is" "required or authorized by law …" *or* "performed by a public servant … in a reasonable exercise or performance of the public servant's official power, duty, or function." A law enforcement officer also possesses the defense of justification for the use of physical force and deadly physical force under the same subchapter of the Arkansas Code. Ark. Code Ann. § 5-2-610. Under Arkansas law, a person may not resist arrest via physical force. Ark. Code Ann. § 5-2-612.

In this case, it was objectively reasonable to *attempt* to detain the Decedent (based on Padilla's own assertions to law enforcement in her emergency calls as well as Decedent' conduct). It was objectively reasonable to use force Officer McInturff used in this case. And, as noted above, even assuming *arguendo* an underlying constitutional violation, McInturff is entitled to qualified immunity because the law was not clearly established in a more particularized sense based on binding precedent with sufficient factual correspondence or a robust consensus of persuasive authority that had sufficient factual correspondence as of the date of the incident in this case. Thus, McInturff's conduct cannot constitute assault nor be beyond all bounds of decency, utterly intolerable in a civilized society, or extreme and outrageous if his actions were objectively reasonable or not clearly objectively unreasonable based on existing law. Additionally, McInturff is entitled to the defense of justification for all state claims, because, again, his conduct was objectively reasonable or at least not clearly objectively unreasonable based on existing precedent as of the date of the incident with the Decedent. Plaintiff's outrage and assault claims should fail

and Defendants are entitled to summary judgment. Further, Plaintiff's attempt to assert a statutory claim (per 16-118-107) should fail, also because Officer McInturff was justified in using the force he used in this matter and, thus, Defendants are entitled to summary judgment on this claim as well. Additionally, see below discussion regarding statutory immunity as to any state law claims against Sheriff Wright or Saline County which is incorporated in this section by reference.

### E.      Wrongful Death

Plaintiff asserts a state law claim of wrongful death, and asserts that Officer McInturff acted recklessly and wrongfully, which he denies. First, McInturff is entitled to summary judgment for such claim because, as argued above, his actions were not wrongful but were objectively reasonable. Additionally, Officer McInturff's conduct was justified under Arkansas statutory law. Ark. Code Ann. §§ 5-2-603, 610.

Further, McInturff is entitled to statutory immunity for this claim (as are Sheriff Wright and the County to the extent the wrongful death claim is made against them as well). Arkansas Code Annotated § 21-9-301(a) immunizes the County, County Officials, and Employees to the extent not covered by liability insurance—here, Defendants have shown they do not possess liability insurance that would cover any claim made in this case.

Subsection (b) of the statute additionally states: "[n]o tort action shall lie against any such political subdivision because of the acts of its agents and employees." Ark. Code Ann. § 21-9-301(b). The Arkansas Supreme Court has routinely held the statute immunizes an official's alleged negligent conduct. *Franklin v. City of Ozark*, 2025 Ark. App. 308, *10, 715 S.W.3d 882, 888. In *Franklin*, the Arkansas Court of Appeals held that an allegation that an officer's conduct was "willful and wanton" in pursuit of a wrongful death claim failed to assert a claim that could overcome statutory immunity because it sounded in negligence. *Id.* at *12.  In *Sledge v. City of*

*Pine Bluff*, the Arkansas Court of Appeals found that allegations of "gross negligence" and "reckless indifference" were insufficient to overcome statutory immunity in a wrongful-death action. No. CV-20-547, 2022 Ark. App. 23, *3-4 (Ark. App. Jan. 19, 2022) (unreported).

Plaintiff's allegations here, like those in *Franklin* and *Sledge*, fail to overcome all Defendants' entitlement to statutory immunity for Plaintiff's wrongful death claim. Additionally, and separately, under subsection (b) of the immunity statute, the County and Sheriff cannot be vicariously liable for *any* alleged tort claim or wrongful death claim. This is true even as to Plaintiff's state tort claims of assault or outrage and Plaintiff's attempted statutory claim. *Young v. Blytheville Sch. Dist.*, 2013 Ark. App. 50, 425 S.W.3d 865. In *Young*, while a minor had been the victim of intentional wrongdoing, that was not enough to find the *School District* engaged in intentional tortious conduct. *Id*. at *9, 425 S.W.3d at 873.

Finally, the County and Sheriff cannot be held vicariously liable for any of Plaintiff's state tort claims (assault, outrage, or wrongful death) or Plaintiff's statutory claim because, even assuming *arguendo* an underlying intentional tort, such alleged acts by Officer McInturff (which are denied) were not foreseeable. *Edwards v. City of Rockport*, No. 04-6136, 2005 WL 3805944, *2-3 (W.D. Ark. Sept. 29, 2005) (unreported); *Regions Bank & Trust v. Stone County Skilled Nursing Facility, Inc.*, 345 Ark. 555, 49 S.W.3d 107 (2001).

## IV.   CONCLUSION

Based on the foregoing, the Defendants are entitled to qualified and statutory immunity, and on the merits summary judgment, as to all claims made by the Plaintiff.

Respectfully submitted,

DWIGHT MCINTURFF and
RODNEY WRIGHT, Individually and in
their Official Capacities, Saline County, Arkansas
*Separate County Defendants*

23

Michael A. Mosley
Ark. Bar No. 2002099
OWENS & PARKER LAW FIRM, P.A.
**Mailing Address:** P.O. Box 850
Conway, Arkansas 72033-0850
**Physical Address:** 1160 Markham St., Ste. 2
Conway, Arkansas 72032
Telephone: (501) 764-4334
Telefax: (501) 764-9173
Email: mosley@jowenslawfirm.com