IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MITZI PADILLA, personally and as the**
**special administrator of the estate of**
**JEREMY DALE ADAMS**                                                  **PLAINTIFF**

CASE NO. 4:24-cv-00771-BSM

**DWIGHT MCINTURFF, Individually and**
**In his Official Capacity as an employee**
**Of the Saline County Sheriff's Office;**
**RODNEY WRIGHT, Individually and in his**
**Official Capacity as the Saline County**
**Sheriff; Saline County, Arkansas**                                **DEFENDANTS**

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Come Now County Defendants, in their individual and official capacities, by and through Undersigned Counsel, and for their Statement of Undisputed Material Facts ("SUMF") herein state and allege:

1.      Rodney Wright is the Sheriff of Saline County Arkansas, and was so on November 16, 2023. *See* Affidavit of Sheriff Rodney Wright ("Wright Affidavit"), ¶ attached as **Exhibit A**. Officer Dwight McInturff is a reserve deputy for the Saline County Sheriff's Department and was so on November 16, 2023. *See* Deposition of Sheriff Rodney Wright ("Wright Deposition"), p. 11:5-13, attached as **Exhibit B**.

2.      Sheriff Rodney Wright has been the Saline County Sheriff for eleven years. *See* Wright Deposition, p. 5:21-23.

3.      The Plaintiff, Mitzi Padilla, as the Special Administrator of the Estate of Jeremy Dale Adams, brings suit against Dwight McInturff and Sheriff Rodney Wright, both individually and officially, and Saline County, Arkansas. *Amended Complaint*, Doc. No. 12.

4.    On November 16, 2023, the Decedent went to a friend's house with his father to clean a yard. *See* Deposition of Mitzi Padilla ("Depo. of Padilla" or "Padilla Deposition"), p. 42:1-5, attached as **Exhibit C**.

5.    The Plaintiff received a phone call from the Decedent and the Decedent stated "I messed up and drank a little bit." The Decedent said he did not want to drive home and asked the Plaintiff to pick him up. *See* Depo. of Padilla, p. 42: 6-10.

6.    The Plaintiff picked up the Decedent from the friend's house and drove him to her property at 8983 Wasson Road in Saline County, Arkansas. When the Plaintiff drove on Wasson Road, a car behind them allegedly revved its engine and angered the Decedent. *See* Depo. of Padilla, p. 42:10-25, 43:1-3.

7.    The Plaintiff testified that the Decedent was angry and could not calm himself down so the Plaintiff called 911. *See* Depo. of Padilla, p. 43:5-14; *see also* November 16, 2023, 911 Audio Recording, attached as **Exhibit D**.

8.    The Plaintiff testified that she had to call 911 in the past because the Decedent would get angry. *See* Depo. of Padilla, pp. 35:8-23, 37:2-20, 45:7-15.

9.    The Plaintiff confirmed that it was her voice on the 911 recording and, thus, authenticated her statements to 911 via her calls on November 16, 2023. *See* Depo. of Padilla, p. 61:15-24 – 62:1-2, 62:4-21, 63:8-10, 64:19-24; *see also* November 16, 2023, 911 Audio Recording.

10.    The Plaintiff told the 911 dispatcher that a car was following behind her and the Decedent and they [the vehicle following behind the Plaintiff and the Decedent] did not do anything wrong. Then her brother [the Decedent] kicked her door open. *See* November 16, 2023, 911 Audio Recording.

11.    The Plaintiff then told the 911 Dispatcher that the Plaintiff opened the door and he was threatening to beat people up and then he started to throw rocks at her truck. *See* November 16, 2023, 911 Audio Recording (Exhibit D). She attempted to augment what she told 911 at her deposition but still admitted the Decedent was going to throw rocks at her truck. Padilla Deposition, p. 64:19-24. Although, Plaintiff admits she actually told 911 dispatch the Decedent was "throwing rocks" and was going to break out her windows. *Id*. at p. 83:1-8.

12.    Plaintiff stated to 911, which she authenticated under oath at her deposition: "I don't want him at my house." Padilla Deposition (Exhibit C) 65:25; *see also* November 16, 2023, 911 Audio Recording (Exhibit D). She confirmed that the "him" she referred to was the Decedent, her brother. Padilla Deposition, at p. 66:2-4.

13.    The Plaintiff then stated that the Decedent said he did not care about "us," "he's drunk," and that he was going to bust the windows out of her truck. *See* November 16, 2023, 911 Audio Recording; Padilla Deposition, p. 67:13-17.

14.    Padilla then told 911 that the address was her address and that she was across the street. Padilla Deposition, p. 68:17-24.

15.    Padilla specifically told dispatch that the Decedent did not reside at her home. *Id*. at p. 68:24.

16.    She told 911 dispatch the Decedent was still at her home and that she drove off from her residence *because* the Decedent "was going to try to break my windows out of my truck." *Id*. at p. 68:25 – 69:1-2. She testified that the Decedent got angry and that her children would be home from school soon and she wanted him off her property because of that information. *Id*. at 69:10-24.

17.     And despite Plaintiff attempting to downplay what she actually told 911 dispatch and later the State Police, she admits that she advised the Decedent was throwing rocks at McInturff's patrol vehicle when McInturff arrived. Padilla Deposition, p. 73:18-23.

18.     Officer McInturff received a text from dispatch stating there was a terroristic threatening call that "callers brother was threat[en]ing the caller was saying that he was gonna bust the windows out of callers veh[icle]." *See* November 16, 2023, Text Message from 911 Dispatch, attached as **Exhibit D**.

19.     The Plaintiff then called 911 again to confirm that law enforcement was coming. *See* Padilla Deposition (Exhibit B), p. 48:7-11. She again confirmed it was her voice and her second call to 911 (Exhibit E), authenticating that call at her deposition. Padilla Deposition p. 74:7-18.

20.     In the second 911 call, the Plaintiff states that her brother "flipped out". *See* Second November 16, 2023, 911 Audio Recording, attached as **Exhibit E**.

21.     Plaintiff told 911 dispatch on her second 911 call that the Decedent had gone into Plaintiff's home and that her mother was in the home and was disabled. Plaintiff confirmed she was still parked across the street. Padilla Deposition, p. 75:1-22; *see also* Exhibit E, Second November 16, 2023, 911 Audio Recording.

22.     Plaintiff concedes when Officer McInturff arrived, the Decedent was kicking rocks at Officer McInturff's tires. Padilla Deposition, p. 49:11-13.

23.     The Plaintiff testified that, after Officer McInturff arrived, he told the Decedent to get down with his hands up or to put his hands behind his back. *See* Padilla Deposition, p. 49:17-21; 53:25 – 54:1-5. Plaintiff confirmed in her testimony the Decedent did not comply with that command. *Id*.

4

24.    Plaintiff also testified, to avoid the Decedent breaking her windows before law enforcement arrived, she parked across the street from her own home and, when McInturff arrived, she pulled in behind Officer McInturff. *Id*. at p. 50:22-25; 48:3-4.

25.    The Decedent was yelling and cursing and Officer McInturff told the Decedent to "get down and put your hands up" or put his hands behind his head. *See* Padilla Deposition, p. 53:4-6.

26.    The Decedent did not comply with Officer McInturff's orders. *See* Padilla Deposition, p. 54:20-24, 83:12-15.

27.    Plaintiff yelled at the Decedent during this time, and told him to "calm down and please stop." Padilla Deposition, p. 81:12-15.

28.    Plaintiff testified that the Decedent was allegedly off his medication and he had been drinking alcohol. *See* Padilla Deposition, p. 70:15-18. A later toxicology report shows the Decedent had methamphetamine, cannabis, benzodiazepines, and alcohol in his system. *See* Toxicology Report of Decedent Jeremy Adams; attached as **Exhibit G.**

29.    The Plaintiff testified that the Decedent did not comply with Officer McInturff's commands to back up and to let him be handcuffed. *See* Padilla Deposition, pp. 81:22-25, 91:24-25, 92:1-2.

30.    Mitzi Padilla authenticated the video she took of the incident on November 16, 2023. Hereinafter, referred to November 16, 2023, Video. *See* Padilla Deposition. The video is attached as **Exhibit H** and is being filed conventionally herewith.

31.    The following events are depicted in the November 16, 2023, Video (Exhibit G).

32.    At timestamp 00:27 the Plaintiff steps out of her vehicle and states, "Brother, please calm down. Please Jeremy, stop."

33.     At timestamp 00:39, Officer McInturff tells the Decedent to back up.

34.     At timestamp 00:49, the Decedent takes a step towards Officer McInturff and states "I don't give a fuck".

35.     At timestamp 1:00, the Decedent turns to go in the Plaintiff's house, where the Plaintiff's disabled mother lives.

36.     At timestamp 1:02, Officer McInturff grabs the Decedent to prevent him from going in the house.

37.     Officer McInturff testified and told the Arkansas State Police following the incident that he did not want the Decedent to enter the house because he was scared that there could be a gun in the house. *See* Deposition of Dwight McIntruff, attached as **Exhibit H**, p. 34:6-17.

38.     At timestamp 1:04 of the Video (Exhibit G), the Decedent falls to the ground on a child's toy and immediately stands up.

39.     At time stamp 1:05, the Decedent aggressively walks towards Officer McIntuff with his hands in fists and states "if you ever grab my God damn hair again".

40.     At time stamp 1:10, Officer McInturff states "I said back up".

41.     At time stamp 1:15, Officer McInturff grabs his handcuffs to handcuff the Decedent.

42.     At timestamp 1:19, Office McInturff attempts to grab the Plaintiff's arm to handcuff him and the Decedent grabs Officer McInturff's hand and twists it off so he is unable to handcuff the Decedent.

43.     At timestamp 1:21, the Plaintiff states "please Jeremey, let him help you."

44.     At timestamp 1:23, the Decedent states, "I don't give a fuck".

45.     At timestamp 1:39, the Plaintiff states "brother just let him help you, please".

46.     At timestamp 1:48 (Exhibit G), the Decedent attempts to walk into his sister's home again and Officer McInturff grabs his hair to prevent him from entering the home.

47.     At timestamp 1:52, the Decedent aggressively walks towards Officer McInturff with his hands in fists.

48.     At timestamp 1:54, the Decedent strikes Officer McInturff violently on the side of his head with a closed fist.

49.     At timestamp 1:55, the Decedent lunges and attempts to strike Officer McInturff on the side of his head again with a closed fist before Officer McInturff's gun is discharged three times.

50.     Prior to using his service weapon, McInturff attempted to employ a taser, but it had no effect on the Decedent. *See* Padilla Deposition (Exhibit C), p. 87:3-6

51.     Officer McInturff testified that he was scared for his life when the Decedent started to beat on his head. *See* Deposition of Dwight McInturff ("McInturff Deposition"), attached as **Exhibit I**, p. 121:4-7.

52.     Officer McInturff was diagnosed with a concussion following the blows to the head by the Decedent. *See* McInturff Deposition, p. 82:1-2.

53.     The Plaintiff testified that alcohol did affect the Decedent's alleged schizophrenia and bipolar disorder and made him angry. *See* Padilla Deposition, p. 24:3-8.

*Officer McInturff's Training*

54.     Reserve deputies receive 120 hours of training each year at the Saline County Sheriff's Department. *See* Wright Deposition, p. 9:17-22, **Exhibit B**; *see* Wright Affidavit, **Exhibit A**, Officer McInturff's Training File.

55.    Officer McInturff also had 120 hours of training that is required for reserve deputies and over 300 additional hours of online training courses as well. *See* Wright Affidavit, **Exhibit** A, Officer McInturff's Training File.

56.    The Saline County Sheriff's Office has a Use of Force Policy and Firearms Policy. *See* Wright Affidavit; **Exhibit A,** Saline County Sheriff's Office Policy Section 4.1 and 4.2.

57.    Officer McInturff was trained on the use of force policy. *See* Wright Deposition, p. 15:3-12. He was a certified officer as a reserve officer on November 16, 2023. *Id*. at p. 16:2-9.

58.    Based on his training and certification, the Sheriff testified Officer McInturff was qualified to handle Plaintiff's terroristic threatening report to 911. *Id*. at p. 18:12-16.

59.    None of the Defendants possess liability insurance that would cover any claim made in this case. *See Affidavit of County Judge Matt Brumley*, attached as **Exhibit J.**

Respectfully submitted,

DWIGHT MCINTURFF and
RODNEY WRIGHT, Individually and in
their Official Capacities, Saline County, Arkansas
*Separate County Defendants*

Michael A. Mosley
Ark. Bar No. 2002099
OWENS & PARKER LAW FIRM, P.A.
**Mailing Address:** P.O. Box 850
Conway, Arkansas 72033-0850
**Physical Address:** 1160 Markham St., Ste. 2
Conway, Arkansas 72032
Telephone: (501) 764-4334
Telefax: (501) 764-9173
Email: mosley@jowenslawfirm.com