IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MITZI PADILLA                                                    PLAINTIFF
Personally and as the special administrator
of the estate of Jeremy Dale Adams

v.                          CASE NO. 4:24-CV-00771-BSM

DWIGHT McINTURFF, *et al.*                                      DEFENDANTS

## ORDER

Defendants' motion for summary judgment [Doc. No. 20] is granted, and Mitzi

Padilla's federal claims are dismissed with prejudice.  Padilla's state claims are dismissed

without prejudice.

## I.  BACKGROUND

Viewing the record in the light most favorable to Mitzi Padilla, the non-moving party,

the facts are as follows.

Dwight McInturff is a reserve deputy for the Saline County Sheriff's Department.  *See*

Statement of Undisputed Facts ("SUMF") ¶ 1, Doc. No. 22.  In November 2023, McInturff

was dispatched to Mizti Padilla's home to investigate a call of terroristic threatening.  *Id.* ¶

18.  Padilla had called 911 to report that her brother, Jeremy Adams, was drunk, threatening

to "beat people up" and break her truck's windows, and that she did not want him at her

house.  *Id.* ¶¶ 7–13; Ex. E, Doc. No. 24.  Padilla had made such calls in the past because

Adams, who suffered with schizophrenia, bipolar disorder, and substance abuse issues, was

sometimes unable to control his anger.  *Id.* ¶ 8; Padilla Dep. 20–21:22–3; 35:8–23; 37:2–20;

45:7–15.  Alcohol tended to worsen Adams's conditions.  Padilla Dep. 24:3–8.

When McInturff arrived at Padilla's home, Adams began kicking rocks at McInturff's car.  SUMF ¶ 22.  McInturff exited the vehicle and told Adams multiple times to get down with his hands up or put his hands behind his back.  *Id*. ¶¶ 23, 25.  Adams ignored McInturff and began walking across Padilla's lawn toward the front door of her home.  *See* Padilla Video Footage ("Video") 0:01–12, Ex. H, Doc. No. 24.  McInturff caught up with Adams and tried to restrain him at the entryway, but Adams broke free.  *See* Video at 0:34–37.  In the video of the incident, it appears that at this point McInturff drew his firearm.  *Id.* at 00:37–43.

McInturff then briefly attempted to negotiate with Adams but Adams did not comply.  *Id.* at 00:43–1:00.  Adams turned away from McInturff and attempted to enter Padilla's home, but McInturff grabbed his hair and pulled him to the ground. *Id.* at 1:00–3.  Adams got up immediately and approached McInturff, who told Adams to "back up."  *Id.* at 1:03–14.  McInturff removed a pair of handcuffs from his belt and reached for Adams, but Adams pushed his arm away.  *Id*. at 1:14–21.

After another unsuccessful attempt to negotiate, Adams tried to enter Padilla's home again, and McInturff, still holding his firearm, pulled Adams backward by the hair a second time.  *See* Video at 1:22–48.  Adams staggered, turned, grabbed McInturff's vest, and began punching McInturff in the side of the head.  *Id.* at 1:49–1:54.  The first blow caused McInturff to stumble, and as Adams hit McInturff a second time, while still holding his vest, McInturff fired three shots, striking and killing Adams.  *Id.* at 1:55–56.

2

Although the timing is unclear, it is undisputed that at some point during this confrontation McInturff unsuccessfully attempted to subdue Adams with his taser.  SUMF ¶ 50; McInturff Dep. 37:22–38:3; 38:15–25.

Padilla is suing McInturff, the Saline County Sheriff, Rodney Wright, Saline County, and the Saline County Sheriff's Office, alleging (1) federal constitutional violations; (2) violations of the Arkansas Civil Rights Act and Arkansas Crime Victim's Liability Act; (3) assault; (4) battery; (5) outrage; and (6) wrongful death.  Defendants are moving for summary judgment on all claims.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in her pleadings.  *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).  Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial.  *Id.*  All reasonable inferences must be drawn in a light most favorable to the non-moving party.  *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).  The evidence is not weighed, and no credibility determinations are made.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III.  DISCUSSION

Defendants' motion for summary judgment is granted.  Padilla's federal claims are

dismissed with prejudice, and her state claims are dismissed without prejudice.

A.     Qualified Immunity

McInturff is immune from suit, so the federal claims against him in his individual capacity are dismissed.  Officers are shielded from civil damages by qualified immunity when their conduct does not violate a clearly established statutory or constitutional right. *Kelsay v. Ernst,* 933 F.3d 975, 979 (8th Cir. 2019); *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019)(in determining whether an officer has qualified immunity, courts must answer whether the officer violated a clearly established right).

*1. False Arrest*

McInturff has qualified immunity on Padilla's false arrest claim because McInturff had probable cause to arrest Adams.  Therefore, he did not violate Adams's clearly established right.

The clearly-established right to be free from a warrantless arrest does not apply when the officer has probable cause to believe that an individual is engaging in criminal activity. *See Rose v. City of Mulberry*, 533 F.3d 678, 680 (8th Cir. 2008) (arrests made with probable cause do not violate the Fourth Amendment).  Probable cause exists if, under the totality of the circumstances, a reasonable officer would believe that the suspect has committed or is committing an offense.  *See Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010).  When making qualified immunity determinations, courts do not determine whether the officer actually had probable cause, but only determine whether the officer arguably had probable cause.  *See Galanakis v. City of Newton, Iowa*, 134 F.4th 998, 1003 (8th Cir. 2025); *Joseph*

*v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (arguable probable cause is exists even if officer mistakenly arrests suspect, so long as mistake is objectively reasonable).

McInturff had probable cause to arrest Adams. It is undisputed that Padilla placed two calls to 911, explaining that Adams was drunk, threatening to "beat people up" and break her truck's windows, and that she wanted him off of her property because her disabled mother was inside her home and her children would be returning from school shortly. When McInturff arrived, Adams was violent, aggressive, noncompliant, and appeared to be under the influence of drugs and/or alcohol. Based on these circumstances, it was reasonable for McInturff to believe that Adams was engaging in unlawful activity.

Although Padilla now denies that Adams was intoxicated, she said otherwise to the 911 operator, and the toxicology report showed that Adams had methamphetamine, cannabis, benzodiazepines, and alcohol in his system. *See* SUMF ¶ 28. Padilla also appears to argue that McInturff could not have reasonably believed Adams was engaged in unlawful activity because Adams was merely attempting to enter his own home. This argument is rejected because it is not supported by the record. Padilla testified that Adams did not reside on the property, and she told the 911 operator that Adams did not live with her and that she wanted him removed to protect herself and her family.

Even if McInturff did not have probable cause, qualified immunity still applies because Padilla fails to point to any established law that would have put McInturff on notice that an arrest was unreasonable under the circumstances.

*2. Excessive Force*

McInturff has qualified immunity on Padilla's excessive force claim because it was objectively reasonable for McInturff to use deadly force.

Objectively unreasonable uses of deadly force violate the Fourth Amendment. *See Dimock, Trustee for Heirs of Dimok-Heisler v. City of Brooklyn Center*, 124 F.4th 544, 552 (8th Cir. 2024). An officer's use of deadly force is reasonable, however, "if [he] has probable cause to believe that the suspect poses a threat of serious physical harm, either to officers or others." *Thompson v. Dill*, 930 F.3d 1008, 1013 (8th Cir. 2019) (quoting *Estate of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012)). The severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest are all considered to determine whether the degree of force used was reasonable. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Although Adams's death is truly tragic, his clearly-established rights were not violated because McInturff's use of deadly force was reasonable under the circumstances. Adams was hostile, aggressive, resisting arrest, and appeared to be intoxicated. Moreover, McInturff attempted to subdue Adams with handcuffs and a taser shortly before Adams grabbed McInturff's vest and began to repeatedly punch him in the head. Though Adams was unarmed, at thirty-nine years old, he was much younger than McInturff, who was seventy-five years old. *See Church v. Anderson*, 898 F.3d 830, 833 (8th Cir. 2018) (considering size and relative strength of officer and suspect to determine deadly force was reasonable). And

6

the video footage confirms that Adams was striking and overpowering McInturff when the shots were fired. *Id.*;  McInturff Dep. 42:10–43:02; Video at 1:49–54.  Given the circumstances, McInturff's concerns for his safety, and the "tense, uncertain, and rapidly evolving" situation, it was reasonable for him to use deadly force to defend himself. *Graham*, 490 U.S. at 397.

Padilla's argument that  McInturff's use of deadly force was unreasonable because he responded to Padilla's call alone, failed to call for backup, and improperly used his taser is not persuasive.  As an initial matter, Padilla presents no evidence indicating that McInturff improperly used his taser.  Further, "the reasonableness of an officer's use of deadly force [is evaluated] by looking primarily at the threat present *at the time* the force is deployed." *See Dimock*, 124 F.4th at 552 (referencing *Banks v. Hawkins*, 999 F.3d 521, 525–26 (8th Cir. 2021)).  As discussed above, McInturff's use of deadly force was reasonable when Adams was striking him, and his solo response and failure to call for backup do not change this. While in retrospect, these actions may not have been ideal, reasonableness is judged from the perspective of a reasonable officer *on the scene*, rather than one with 20/20 hindsight.  *See Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000) (cleaned up & citations omitted); *Church*, 898 F.3d at 833 (an officer need not pursue the most prudent course of conduct).

In *Partridge v. City of Benton, Arkansas, et al.,* 929 F.3d 562 (8th Cir. 2019) the Eighth Circuit reversed my determination that the officer was shielded by qualified immunity in another tragic case in which an officer shot and killed a young man who was holding a gun.  In doing so, the circuit determined that the young man was not suspected of a crime,

7

was not actively resisting arrest or attempting to flee, and that the direction and speed with which the young man moved the gun were disputed. *Id.* When the video captured herein is viewed and the factors articulated by the circuit are applied, qualified immunity is appropriate.

Even if McInturff's use of deadly force was unreasonable, the cases cited by Padilla are not sufficient to put McInturff on notice that his actions violated the Fourth Amendment. As an initial matter, these cases involve the use of tasers or pepperspray, not firearms, and deal with non-resistant suspects who were not threatening officer safety. *See, e.g., Brown v. City of Golden Valley*, 574 F.3d 491, 499–500 (8th Cir. 2009) (officers on notice that tasing suspect who was not a safety threat and was not resisting or attempting to flee is unconstitutional); *Wanbaugh v. Fields*, 508 F. Supp. 2d 723, 729–30 (W.D. Ark. 2007) (officers on notice that repeated use of taser on unarmed, restrained arrestee, without volatile or deadly circumstances, is unconstitutional); *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 663–65 (10th Cir. 2010) (no qualified immunity when officer used taser on non-violent and non-threatening suspect). Moreover, *Hickey v. Reeder* deals with the Eighth Amendment, not the Fourth. 12 F.3d 754, 759 (8th Cir. 1993). And the officer in *Bryan v. MacPherson* was granted qualified immunity. 630 F.3d 805, 833 (9th Cir. 2010) (qualified immunity granted because reasonable officer could have made mistake regarding the constitutionality of taser use).

    B.    <u>Rodney Wright, Municipal Claims, and McInturff in his Official Capacity</u>

Summary judgment is granted on Padilla's official capacity claims against McInturff

and his claims against the county and sheriff, Rodney Wright, because McInturff is immune from suit. *See Jonhson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (suit against individual in official capacity is the same as suit against the department); *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) (when underlying officers are entitled to qualified immunity, supervisors and governmental entities cannot be held liable under section 1983 for failure to train or supervise); *Roe v. Humke*, 128 F.3d 1213, 1218 (8th Cir. 1997) (police chief cannot be held liable given absence of underlying violation of constitutional rights); *Turpin v. County of Rock*, 262 F.3d 779, 784 (8th Cir. 2001) (county entitled to summary judgment when officers were granted summary judgment on qualified immunity grounds). This is true even if there were improper rules or regulations in place. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("the fact that the departmental regulations might have authorized the use of constitutionally excessive force is beside the point") (emphasis in original).

C.   State Law Claims

Padilla's remaining state law claims are dismissed without prejudice because the factors considered in determining whether to exercise supplemental jurisdiction—judicial economy, convenience, fairness, and comity—weigh in favor of declining jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Hunter v. Page County, Iowa*, 102 F.4 853, 870 (8th Cir. 2024) (citations omitted).

IV. CONCLUSION

For these reasons, defendants' motion for summary judgment is granted. Padilla's

9

federal law claims are dismissed with prejudice, and her state law claims are dismissed without prejudice.

      IT IS SO ORDERED this 19th day of February, 2026.


_____
UNITED STATES DISTRICT JUDGE